1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10   SAND CANYON CORPORATION, FKA        No.  2:12-cv-02107 JAM-KJN
     PREMIER TRUST DEED SERVICES,
11   INC.,

12              Plaintiff              **ORDER GRANTING UNITED STATES'**
                (Petitioner),          **UNOPPOSED MOTION FOR SUMMARY**
13                                      **JUDGMENT**

14        v.

15   ALAN S. COLEMAN, STACI E.
     COLEMAN, CALIFORNIA SERVICE
16   BUREAU, CALIFORNIA FRANCHISE
     TAX BOARD, FRIEDMAN
17   FINANCIAL, and UNITED STATES
     OF AMERICA,
18
                Defendants.
19

20        This matter is before the Court on Defendant United States

21   of America's ("the United States") Motion for Summary Judgment

22   (Doc. #20).  Pursuant to the state court's order excusing

23   Petitioner Sand Canyon Corporation ("Petitioner") from making

24   further appearances, Petitioner did not file an opposition or

25   statement of non-opposition.[1]  For the following reasons, the

26   _____

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for April 3, 2013.

                                    1

1  United States' motion is granted.

2

3                    I.    BACKGROUND

4       A.   Procedural and Undisputed Factual Background

5       In 2007, Petitioner, trustee to a mortgage on the real

6  property of Alan S. and Staci E. Coleman (collectively "the

7  Colemans"), foreclosed its mortgage and sold the real property.

8  United States' Statement of Undisputed Facts (Doc. #20), ("SUF")

9  at ¶¶ 2-6.  Following the foreclosure and sale of the real

10 property, Petitioner deposited the surplus funds from the sale,

11 $306,853.49, with the Solano County Superior Court and filed this

12 interpleader action against the Colemans, California Service

13 Bureau ("CSB"), California Franchise Tax Board ("FTB"), Friedman

14 Financial, and the United States to determine the correct

15 priority of the parties' claims.  Id. ¶¶ 7, 11.  On August 13,

16 2012, the United States filed a notice of removal (Doc. #1).  On

17 September 24, 2012, this Court issued an order transferring the

18 surplus funds from the Solano County Superior Court to the United

19 States District Court, Eastern District of California (Doc. #9).

20 FTB filed a claim to the surplus funds on September 26, 2012

21 (Doc. #10), the United States filed a claim on September 28, 2012

22 (Doc. #13), and CSB filed a claim on October 10, 2012 (Doc. #14).

23 On December 21, 2012, pursuant to the United States' request, the

24 Clerk of Court entered default as to the Colemans and Friedman

25 Financial (Doc. #19).

26      B.   The United States' Claim

27      The United States' claim arises from federal tax liens

28 resulting from unpaid 1999 federal income tax liabilities

1    assessed against the Colemans jointly.  A duly authorized

2    delegate of the Secretary of Treasury made federal income tax

3    (Form 1040), penalty, interest, and other statutory addition

4    assessments against the Colemans for the tax period ending on

5    December 31, 1999.  SUF ¶¶ 26.  The Internal Revenue Service made

6    the assessments on December 23, 2002, and provided timely notice

7    and demand for payment.  Id. ¶¶ 27.  An authorized delegate of

8    the Secretary of the Treasury refiled a Notice of Federal Tax

9    Lien against the Colemans in Solano County Recorder's Office on

10   May 8, 2003, in the amount of $20,090.82.  Notices of Federal Tax

11   Lien, Exhibit 2 and 3 to the Declaration of Lee Perla, Doc. #20,

12   ("Perla Dec."), at 1.  Thereafter, the Colemans failed to pay the

13   assessed amounts.  Id.

14        C.   FTB's Claims

15        FTB's claims arise from recorded interest in the subject

16   real property resulting from perfected tax liens for the 2000,

17   2001, 2002, 2003, and 2004 tax years.  SUF ¶ 36.  FTB duly

18   perfected its state tax liens against the real property of Alan

19   S. Coleman when it recorded Notices of State Tax Lien in the

20   Solano County Recorder's office for the 2000 tax year in the

21   amount of $17,199.48 on May 21, 2003, and $18,456.56 on November

22   8, 2004; for the 2001 tax year in the amount of $14,352.69 on

23   November 8, 2004; for the 2002 tax year in the amount of

24   $16,380.04 on November 8, 2004; for the 2003 tax year in the

25   amount of $2,568.12 on May 24, 2006; and for the 2004 tax year in

26   the amount of $4,672.08 on February 9, 2007.  See Certificate of

27   Tax Due and Delinquency, Exhibit 9 to the Perla Dec., Doc. #20,

28   at 3.  The Colemans did not pay the assessed amounts.  Id.

1      D.   CSB's Claim

2      CSB's claims rest on recorded interests in the subject real

3  property arising from three judgment liens obtained following

4  proceedings in Solano County Superior Court.  SUF ¶ 31.

5  Abstracts of Judgment in favor of CSB and against the Colemans

6  were duly recorded with the Solano County Recorder's Office on

7  August 17, 2001, for $3,933.14; on September 2, 2003, for

8  $9,692.24; and on June 10, 2005, for $167,087.67.  These

9  judgments remain unsatisfied and have been accruing interest.

10     Therefore, the timely filed claims are as follows:

| Party | Amount | Recorded | Record No. |
|-------|--------|----------|------------|
| CSB | $3,933.14 | Aug. 17, 2001 | 2001-94472 |
| U.S. | $20,090.82 | May 8, 2003 | 2003-74436 |
| FTB | $17,199.48 | May 21, 2003 | 2003-82290 |
| CSB | $9,692.24 | Sep. 2, 2003 | 2003-147957 |
| FTB | $18,456.56 | Nov. 8, 2004 | 2004-160297 |
| FTB | $14,352.69 | Nov. 8, 2004 | 2004-160297 |
| FTB | $16,380.04 | Nov. 8, 2004 | 2004-160297 |
| CSB | $167,087.67 | Jun. 10, 2005 | 2005-85757 |
| FTB | $2,568.12 | May 24, 2006 | 2006-65786 |
| FTB | $4,672.08 | Feb. 9, 2007 | 2007-16772 |

II.     OPINION

A.   Legal Standard

Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue of

material fact and that the moving party is entitled to judgment

4

1  as a matter of law." Fed. R. Civ. P. 56(a).  The purpose of

2  summary judgment "is to isolate and dispose of factually

3  unsupported claims or defenses." Celotex v. Catrett, 477 U.S.

4  317, 323-324 (1986).

5      The moving party bears the initial burden of demonstrating

6  the absence of a genuine issue of material fact for trial.

7  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  If

8  the moving party meets its burden, the burden of production then

9  shifts so that "the non-moving party must set forth, by affidavit

10  or as otherwise provided in Rule 56, 'specific facts showing that

11  there is a genuine issue for trial.'"  T.W. Electrical Services,

12  Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630

13  (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).  The Court must

14  view the facts and draw inferences in the manner most favorable

15  to the non-moving party.  United States v. Diebold, Inc., 369

16  U.S. 654, 655 (1962).  "[M]ere disagreement or bald assertion

17  that a genuine issue of material fact exists will not preclude

18  the grant of summary judgment".  Harper v. Wallingford, 877 F. 2d

19  728, 731 (9th Cir. 1987).

20      The mere existence of a scintilla of evidence in support of

21  the non-moving party's position is insufficient: "There must be

22  evidence on which the jury could reasonably find for [the non-

23  moving party]."  Anderson, 477 U.S. at 252.  This Court thus

24  applies to either a defendant's or plaintiff's motion for summary

25  judgment the same standard as for a motion for directed verdict,

26  which is "whether the evidence presents a sufficient disagreement

27  to require submission to a jury or whether it is so one-sided

28  that one party must prevail as a matter of law."  Id.

1    B.    Discussion

2         The parties ask the Court to determine the correct priority

3    of the parties' claims to the $306,853.49 surplus funds.   Federal

4    Rule of Civil Procedure ("FRCP") 22 "provides a process by which

5    a party may join all other claimants as adverse parties when

6    their claims are such that the stakeholder may be exposed to

7    multiple liability."   Aetna Life Insurance Co. v. Bayona, 223

8    F.3d 1030, 1033 (9th Cir. 2000)(internal quotations omitted).

9    The purpose of an interpleader action is "to decide the validity

10   and priority of existing claims to a res."   Texaco, Inc. v.

11   Ponsoldt, 118 F.3d 1367, 1369 (9th Cir. 1997).   "[F]ederal law

12   governs the relative priority of federal tax liens and state

13   created liens."   Aquilino v. United States, 363 U.S. 509, 514 n.5

14   (1960).   "Absent provision to the contrary, priority for purposes

15   of federal law is governed by the common-law principle that 'the

16   first in time is the first in right.'"   United States v.

17   McDermott, 507 U.S. 447, 449 (1993) (quoting United States v. New

18   Britain, 347 U.S. 81, 85 (1954)).

19        1.    Defendants Alan S. Coleman, Staci E. Coleman, and
                Friedman Financial
20

21        On December 21, 2012, default was entered against the

22   Colemans and Friedman Financial.   Clerk's Entry of Default, Doc.

23   #19, at 1.   Pursuant to FRCP 55, default was entered for failure

24   to timely answer, plead, or otherwise defend.   Accordingly, the

25   Colemans and Friedman Financial have forfeited any claim to the

26   surplus funds.

27        2.    The United States

28        The United States argues that under the "first in time"

6

rule, its tax lien falls between CSB's judgment lied recorded on
September 17, 2001, and CSB's judgment lien recorded on September
2, 2003, and before all of FTB's claims.  The total outstanding
balance due as of January 18, 2013, including statutory accruals,
additions, and interest through that date, is $33,237.55.  SUF ¶
26.  Further, the United States submitted the Internal Revenue
Service Form 4340, Certificate of Assessments and Payments, which
is "highly probative" and "sufficient, in the absence of contrary
evidence, to establish that notices and assessments were properly
made."  United States v. Zolla, 724 F.2d 808, 810 (9th Cir.
1984).

          3.   CSB

     CSB has three claims with different priorities.  Interest on
CSB's judgment liens accrues at the statutory rate of 10% per
annum.  Cal. Code Civ. Pro. § 685.010 (a) ("Interest accrues at
the rate of 10 percent per annum on the principal amount of a
money judgment remaining unsatisfied.").  Because the daily rate
is the principal times the interest rate divided by 365, interest
accrues daily on CSB's three claims at the rate of $1.07 for the
lien recorded on August 1, 2010; $2.65 for the lien recorded on
September 2, 2003; and $45.77 on the lien recorded on June 10,
2005.  Therefore, CSB's claims plus interest equal $8,513.14,
$18,892.68, and $296,774.42 respectively.

          4.   FTB

     FTB has six claims with different priorities.  Interest
accrues on FTB's claims at a statutory rate.  Certificate of Tax
Due and Delinquency, Exhibit 9 to the Perla Dec., Doc. #20, at 3.
The projected total balance due as of January 18, 2013, for FTB's

recorded claims for the 2000, 2001, 2002, 2003, and 2004 tax years equals $85,533.84.  Id.  Of this amount, $28,369.40 represents the outstanding balance of the tax lien recorded on May 21, 2003; $47,223 represents the outstanding balance of the tax liens recorded on November 8, 2004; and $6,671.44 represents the outstanding balance of the tax lien recorded on May 24, 2006 and February 9, 2007.[2]  Id.

Therefore, the timely filed claims projected to January 18, 2013, are as follows:

| Party | Amount | Recorded | Record No. | Balance |
|-------|--------|----------|-----------|---------|
| CSB | $3,933.14 | Aug. 17, 2001 | 2001-94472 | $8,513.14 |
| U.S. | $20,090.82 | May 8, 2003 | 2003-74436 | $33,237.55 |
| FTB | $17,199.48 | May 21, 2003 | 2003-82290 | $28,369.40 |
| CSB | $9,692.24 | Sep. 2, 2003 | 2003-147957 | $18,892.68 |
| FTB | $18,456.56 | Nov. 8, 2004 | 2004-160297 | $47,223 |
| FTB | $14,352.69 | Nov. 8, 2004 | 2004-160297 | |
| FTB | $16,380.04 | Nov. 8, 2004 | 2004-160297 | |
| CSB | $167,087.67 | Jun. 10, 2005 | 2005-85757 | $296,774.42 |
| FTB | $2,568.12 | May 24, 2006 | 2006-65786 | $6,671.44 |
| FTB | $4,672.08 | Feb. 9, 2007 | 2007-16772 | |
| Total | | | | $439,681.63 |

The total balance owed, $439,681.63, is greater than the surplus funds, $306,853.49; therefore, the funds will be depleted before all claims are satisfied.

---

[2] Based on the Certificate of Tax Due and Delinquency, the numbers provided by the United States for each lien were incorrect, but were corrected by the Court to reflect the total liability for each year.

8

1    Accordingly, based on the "first in time" rule, the United

2 States receives $33,237.55 to satisfy its single claim; FTB

3 receives $75,592.40 to satisfy its first four recorded claims;

4 and CSB receives $198,023.54 to satisfy its first and second

5 recorded claims and partially satisfy its third claim.

6

7                          III. ORDER

8    For the reasons set forth above, the United States' Motion

9 for Summary Judgment is GRANTED.  The surplus funds shall be

10 distributed as follows:

11    a.   The United States—$33,237.55, plus additional interest

12 thereon from and after January 18, 2013, less any applicable

13 credits;

14    b.   FTB—$75,592.40, plus additional interest thereon from

15 and after January 18, 2013, less any applicable credits;

16    c.   CSB—$198,023.54, plus additional interest thereon from

17 and after January 18, 2013, less any applicable credits.

18    IT IS SO ORDERED.

19 Dated: April 10, 2013

20                          JOHN A. MENDEZ,
                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

9